AUGUSTUS GEIGER, Appellant, *v.* DWIGHT DIVINE, Respondent.

Third Department, November 10, 1920.

Waters and watercourses — easements — suit to restrain mainte-
nance of dam so as to overflow the lands of an upper proprietor
— claim to easement by adverse user — failure to establish adverse
user — when complaint should not be dismissed upon theory that
defendant has easement by grant — burden of proof.

Where a landowner, having erected a dam which impounded waters so
that they overflowed the lands of an upper proprietor and claiming such
right by adverse user, conveyed the lands and the alleged easement, but
the successor of his grantee discontinued the use of said dam for over
twenty years during which time the upper proprietor farmed and raised
crops on the lands which were formerly overflowed, a subsequent owner
of the lands on which the dam was erected, who has rebuilt the dam so
as to again overflow the lands of the upper proprietor (the plaintiff),
is not entitled to maintain the alleged easement on the theory of a grant
to the same.

The right to rebuild and maintain such dam must depend upon a pro-
scriptive title to the easement which presents a question of fact, and
hence it is error for the court to dismiss the complaint of the upper pro-
prietor who seeks to enjoin the maintenance of the overflow when there
is no proof or finding of such adverse user as would create a prescriptive
title.

For failure of such proof the judgment dismissing the complaint will be
reversed and a new trial granted.

The burden of proving a prescriptive title or right to overflow the plaintiff's
land is upon the defendant.

APPEAL by the plaintiff, Augustus Geiger, from a judgment
of the Supreme Court in favor of the defendant, entered in
the office of the clerk of the county of Ulster on the 7th day
of December, 1917, upon the decision of the court rendered
after a trial at the Ulster Trial Term, the jury having been
discharged, dismissing the complaint upon the merits.

*Amos Van Etten,* for the appellant.

*A. T. Clearwater,* for the respondent.

COCHRANE, J.:

The plaintiff alleges in his complaint that he is the owner
of a farm in the town of Wawarsing, Ulster county, N. Y.,

through which farm flows a stream of water known as the Good Beer Kill, and that about the year 1910 the defendant erected and has since maintained a dam across said stream at a place lower than the plaintiff's farm, causing the water of the stream to overflow about forty acres thereof. The plaintiff demands judgment in said complaint that the defendant be restrained from causing the water to be impounded so as to overflow said premises and for damages for injuries previously sustained. The defendant in his answer denies the material allegations of the complaint and alleges a right by adverse possession to maintain the dam in question as it has been used and maintained by him.

The dam of the defendant is two and one-half or three miles down stream from the farm of the plaintiff. It was constructed by the defendant in the year 1906 and such construction was modified in the year 1909 and again in the year 1914. The dam is used by the defendant in connection with his business of manufacturing cutlery. It causes the water of the stream to overflow a portion of the plaintiff's farm. It is conceded that the damages of plaintiff are $1,000 provided the defendant is liable therefor.

The dam is on a tract of land of about 150 acres, being part of 226 acres which in the year 1853 were conveyed by Richard C. Van Wyck to Joseph H. Tuthill. Shortly after such conveyance to him Tuthill on the site of the present dam erected a dam for use in connection with a saw mill and by means thereof caused the water of the stream to overflow the land now owned by the plaintiff.

In the years 1867 and 1868 Tuthill by two deeds conveyed to the President, Managers and Company of the Delaware and Hudson Canal Company the said 150 acres being part of the land which had been conveyed to him by Van Wyck. These deeds also purported to convey the right to maintain a dam as such right had been exercised by the said Tuthill affecting the lands of others as well as his own lands and the later of the two deeds contained the following provision: " It being the true intent and meaning to convey to the party of the second part and their successors forever the full right of damming the water in the same manner and the same height to which the said Tuthill has [hitherto] maintained it

and all the rights, he the said Tuthill has acquired by usage in keeping up the water on lands of others and also the right so far as it affects the lands of the said parties of the first part, either of them and them only to use said dam or new dam four feet higher than it now is or the present dam has been kept by the said Tuthill with the additional lands so overflowed of the parties of the first part."

The canal company used the dam until the year 1885 or shortly thereafter for the purpose of feeding its canal several miles distant, causing the impounded water to overflow the land now owned by the plaintiff as it had done during the ownership of Tuthill. The trial court made the following finding: " The use of this dam for the storage of water was discontinued by the Delaware & Hudson Canal Company, the then owner of the dam about the year 1885 or '87, and in 1889 it was partially torn open." From that time until the construction of the new dam on the same site by the defendant in 1906 there seems to have been no interference with the farm of the plaintiff by the impounded water of the dam. In the meantime and in the year 1898 the plaintiff acquired title to his farm and produced crops on that portion thereof which since the construction of the new dam by the defendant has been inundated with water.

In the year 1899 the Delaware and Hudson Company (formerly the President, Managers and Company of the Delaware and Hudson Canal Company) conveyed to William C. Rose and he conveyed to this defendant the same property which Tuthill had in the years 1867 and 1868 conveyed to the said company. Such deeds of conveyance purported to convey the same right to maintain a dam and overflow lands as was exercised by said Tuthill. Subsequently and in the year 1906 the said company and the said Rose executed additional conveyances, confirming, amplifying and making more specific the easement to construct a dam and swell back the water which had previously been conveyed to the defendant.

This case has been decided on the theory that the defendant acquired the easement in question by virtue of a grant. The finding is: " That by the conveyances aforesaid  *  *  * the defendant became  *  *  * the owner and possessor of the right to dam, store and impound the waters of the Good

Beer Kill and the Cape Pond to the same extent and in the same manner as they were dammed, stored and impounded by the said Joseph H. Tuthill and the President, Managers and Company of the Delaware and Hudson Canal Company, or by the Delaware and Hudson Company." So far as the evidence discloses, Joseph H. Tuthill never received a grant of any such easement. His deed from Van Wyck contained no such grant, neither did any of the deeds of his predecessors in title so far as we are able to discover. The effect of the deed from Tuthill to the canal company was to grant such an easement as against himself in respect to his other lands not conveyed to the canal company, but he could not create such an easement as against his neighbors. It has also been found by the trial justice that Tuthill " acquired and enjoyed the easement and right to construct and maintain a dam across the waters of the Good Beer Kill at the site where the defendant's dam is now situate, and in such a manner as to cause the waters of the said stream to back up over and to flood the lands now owned by the plaintiff, and did construct and for more than twenty years before the beginning of this action did maintain such a dam," and that finding is repeated with somewhat varying language notwithstanding that the conveyances conclusively show that Tuthill did not own the property for twenty years but only from the year 1853 to the year 1867 or 1868 and that the dam was built by him after he acquired ownership in 1853. Manifestly the grant of such an easement as the defendant claims must originate from one of the predecessors in title of the plaintiff in order to affect his premises.

The right of the defendant to the easement in question must, therefore, depend on a prescriptive title. Whether or not there is such a prescriptive title is a question of fact which apparently has not been decided by the trial justice. The findings state that the predecessors in title of the defendant for more than twenty years overflowed the plaintiff's property but it is found that they did so by virtue of a grant. There is no finding that they did it under a claim of title exclusive of any other right or that they did it adversely or in hostility to the rights of the owners of plaintiff's farm nor are any facts or circumstances found from which it may be inferred that the defendant has acquired a prescriptive title. Not an element

on which such a title depends is contained in the findings except the single element of continuousness of possession. The vital question of fact on which this branch of the controversy depends has not been decided. (*Alcock* v. *Davitt,* 179 N. Y. 9.) Neither on the theory of a title by grant nor of a title by prescription do the findings support the judgment. Neither on the former theory does the evidence support the judgment. On the latter theory there is a serious question of fact which has not been decided.

It has been found that during the occupancy of Tuthill and the canal company the impounded waters flowed back over the lands now owned by the plaintiff to the same extent as they have done since the construction of the defendant's dam. But those findings were necessary in order to support the contention that the defendant had not by his acts exceeded the terms of his grant. In making those findings the learned trial justice placed the burden of proof on the plaintiff. His theory was that the defendant operating under a grant the burden was on the plaintiff to show acts in excess of such grant. In proving a prescriptive title the burden of proof clearly is on the defendant. (*Lewis* v. *New York & Harlem Railroad Company,* 162 N. Y. 202, 220.) Such findings, therefore, are valueless as affording a basis for the conclusion that the defendant has a prescriptive title to the easement in question. It is true that the trial justice found at the request of the plaintiff that " the burden in this action is upon the defendant to show a right to flood plaintiff's lands." But that finding was coupled with a refusal to find that there was no " grant or deed affecting the plaintiff's property " and that " defendant's right to flood plaintiff's land with his dam depends entirely upon a prescriptive right acquired through user of the so-called Tuthill dam." The theory of the trial justice was that the defendant met the burden " to show a right to flood plaintiff's lands " by showing the grant of a right to do so and that then the burden was on the plaintiff to show acts in excess of such grant and on that theory and with the burden of proof thus placed on the plaintiff it was found that the defendant had not caused the water to overflow the land of plaintiff to any greater extent than during the operations of Tuthill and the canal company. That we have properly analyzed the findings

and have attributed to them their intended effect is made plain by reference to the opinion of the learned trial justice. He says: "The defendant had a right under deeds in evidence to maintain a dam across the Good Beer Kill and to back up the water of that stream to the same extent as did the previous owners Tuthill and the Delaware and Hudson Canal Company," and again: "If we understand the rule correctly, the plaintiff should clearly prove, by the greater weight of evidence, that to-day his lands have been more extensively in area covered by the set back of the water than those lands were when the dam previously owned by Tuthill and the Delaware & Hudson Canal Company was standing." Clearly, therefore, there has been no determination by the trial justice of the facts establishing a prescriptive title. His decision and opinion both so demonstrate, the decision by not finding the necessary elements of a prescriptive title and the opinion by showing that he could not have had it in mind to decide that question because if so he was under a misapprehension as to the burden of proof. The evidence as to the extent of the flooding of plaintiff's land by the defendant as compared with the flooding during the existence of the Tuthill dam presented a close and serious question of fact and one which might well turn on the question of the burden of proof. That it did in fact turn on that question in the mind of the trial justice is evident from his entire opinion. In respect to the question of prescriptive title the burden of proof as we have seen was on the defendant.

For the reason, therefore, that the evidence establishes no grant to the defendant of the easement in question and that the question of his prescriptive right thereto has not been decided or if it has been decided that such decision was not reached by the application of correct legal principles, the judgment herein cannot be sustained.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment reversed and new trial granted, with costs to appellant to abide the event.